UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAIS FERNANDEZ HAIRE,

        Plaintiff,

    v.                         Case No. 23-C-912

MATTHEW BURNS, et al.,

        Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

      Plaintiff Trais Fernandez Haire, who is representing himself, is proceeding on an Eighth Amendment claim, along with a supplemental state law negligence claim, in connection with allegations that Defendants Matthew Burns, Jeremy Staniec, Jeremy Westra, Seth Penigar, Ore Burgett, and John Reynolds failed to protect him from an attack by his cellmate on December 30, 2022 at the Waupun Correctional Institution. Dkt. Nos. 1 & 4. On November 29, 2023, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies prior to bringing this lawsuit. Dkt. No. 18. Because the undisputed facts show that Plaintiff failed to properly raise the issue within 14 days of the incident then failed to complete the exhaustion process by appealing the "rejected" inmate complaint, the Court will grant Defendants' motion and dismiss this case without prejudice.

## UNDISPUTED FACTS

      In this lawsuit, Plaintiff alleges that Defendants failed to protect him from an attack by his cellmate inside their cell on December 30, 2022 at the Waupun Correctional Institution. Dkt. No.

1.  Following the December 30 incident, Plaintiff received a conduct report for fighting, lost his job, and had significant property damage from the alleged attack.  Dkt. No. 25-1.

Plaintiff filed one inmate complaint raising the failure to protect issue.  Dkt. No. 20, ¶8; *see also* Dkt. No. 21-1.  On June 14, 2023, Plaintiff filed inmate complaint #WCI-2023-9111 alleging, "I was attacked on 12-30-22 by inmate Lemons while 5 COs & Lt. standing @ the door watching."  Dkt. No. 21-1 at 6.  The Institution Complaint Examiner (ICE) "rejected" the inmate complaint on June 21, 2023 because it was untimely filed more than 14 calendar days beyond the December 30, 2022 occurrence without a good cause plea explaining the untimely filing.  *Id.* at 2.  The ICE's decision stated at the bottom, "If you wish to appeal, complete form DOC 2182 Request for Review of Rejected Complaint" and listed an address the document should be sent to "within 10 days."  *Id.* at 2-3.  Plaintiff did not appeal the rejected inmate complaint or file any other inmate complaints alleging failure to protect by Defendants.  Dkt. No. 20, ¶¶12-13.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  All reasonable inferences are construed in favor of the nonmoving party.  *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).  The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted).  "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.*  Summary judgment is properly

2

entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Defendants assert that they are entitled to summary judgment because Plaintiff's inmate complaint was properly "rejected" as untimely filed, and he additionally did not appeal the rejection as required to complete the exhaustion process. Dkt. No. 19 at 9.

Under the Prison Litigation Reform Act (PLRA), "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood,* 956 F.3d 979, 983 (7th Cir. 2020). "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Id.* (citing *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)). A prisoner must complete the entire exhaustion process to satisfy the PLRA's exhaustion requirement. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Wisconsin has established the Inmate Complaint Review System (ICRS) to raise inmate complaints in connection with employee actions that personally affect the inmate or the institution environment. Wis. Admin. Code §§ DOC 310.05 & 310.06(1). An inmate is required to exhaust "all administrative remedies the department has promulgated by rule" before commencing a civil action. § DOC 310.05. Under the ICRS, an inmate must file a complaint with the ICE within 14

3

days of the relevant occurrence. § DOC 310.07(2). Each complaint may contain only one "clearly identified" issue. § DOC 310.07(5). "A complaint must contain sufficient information for the department to investigate and decide the complaint." § DOC 310.07(6). The inmate complaint "need not lay out the facts, articulate legal theories, or demand particular relief." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). But the inmate complaint must "alert[] the prison to the nature of the wrong for which redress is sought." *Id.* at 650. The inmate complaint must provide enough facts to give defendants "notice of, and an opportunity to correct, a problem." *Price v. Friedrich*, 816 F. App'x 8, 10 (7th Cir. 2020) (quoting *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)).

At the discretion of the ICE, a late complaint may be accepted for good cause provided that an inmate "request[s] to file a late complaint in the written complaint and explicitly provide the reason for the late filing." § DOC 310.07(2). A "rejected" inmate complaint may be appealed within 10 days to the Reviewing Authority. §DOC 310.10(10). An inmate complaint that is properly "rejected" based on a procedural defect does not fulfill the exhaustion requirement. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). This is true because "the benefits of exhaustion" can be realized only if the prison grievance system is given a fair opportunity to consider the grievance on the merits. *Woodford v. Ngo,* 548 U.S. 81, 95 (2006). If noncompliance with the procedural rules "carries no significant sanction," a prisoner who does not want to participate in the prison grievance system "will have little incentive to comply with the system's procedural rules." *Id*. Indeed, the prisoner would be able to file deficient inmate complaints then proceed directly to federal court, wholly bypassing the institution's review of the merits. *Id*.

The undisputed evidence shows that Plaintiff failed to satisfy his exhaustion obligations. First, Plaintiff filed his inmate complaint on June 14, 2023, almost six months after the December 30, 2022 incident giving rise to the claim, and he did not make a good cause plea for the untimely

4

filing.  The ICE therefore properly "rejected" his inmate complaint as untimely filed.  *Conyers*, 416 F.3d at 584 (noting that an inmate complaint that is properly "rejected" based on a procedural defect does not fulfill the exhaustion requirement.).  Second, Plaintiff then failed to appeal the rejected inmate complaint to the RA, even though he was given specific instructions on how to appeal, which document to use, where to send the document, and when it had to be received. Plaintiff therefore also failed to complete the entire exhaustion process by pursuing "all administrative remedies the department has promulgated by rule" before commencing a civil action.  *See* § DOC 310.05; *see also Dole*, 438 F.3d at 809.  Defendants have therefore met their burden to show that Plaintiff failed to exhaust administrative remedies prior to bringing this lawsuit.

In response, Plaintiff argues that he attempted to raise the failure to protect issue through numerous other documents he filed in connection with his conduct report and requests for restitution for damaged property.  Dkt. No. 25.  Plaintiff attached copies of: (1) various "Interview/Information Request" forms he submitted between January 2023 and May 2023; (2) inmate complaint #WCI-2023-769, which he filed on January 13, 2023, along with its appeal document; and (3) several other inmate complaints that have no connection to the failure to protect issue.  Dkt. No. 25-1.

None of the documents Plaintiff attached to his response materials show that he satisfied his exhaustion obligation.  As a preliminary matter, an interview request form is not the proper way to initiate an inmate complaint through the ICRS.  *See* §DOC 310.07(2).  Indeed, in response to the first interview request form Plaintiff submitted, institution staff wrote, "if you are filing a complaint you need to use a DOC 400 and explain what your issue is."  *See* Dkt. No. 25-1 at 1. The responses to his other interview request forms similarly stated, "this is what the IC process is for, please use it to address your concerns [regarding restitution]" and "you would have to appeal

5

your conduct report [before requesting reinstatement at a job]." *Id*. at 5-6. The responses to two other interview request forms even laid out in detail the process he had to follow to raise each separate issue he had in connection with the December 30 incident. *Id*. at 7-8. Plaintiff disregarded those directions and continued to file additional interview request forms reiterating his complaints related to the December 30 incident and sending them to different people at the institution, including the warden. The interview request forms Plaintiff submitted did not satisfy his exhaustion obligation.

With respect to inmate complaint #WCI-2023-769 and its appeal, none of those documents "clearly identified" a failure to protect issue, as required by the ICRS. *See* §DOC 310.07(5). Plaintiff stated in the initial inmate complaint, "cellmate literally broke my TV & headphone… I would like for him to buy me another TV out of his stimulus money in his release account. He has $1200." Dkt. No. 25-1 at 3. The inmate complaint mentioned, "Lemons was getting high off heroin, meth, paper all night…he attacked me while #5 CO's standing at the door." *Id*. But Plaintiff did not state that he had any issue with staff misconduct and/or their alleged failure to protect him. *Id*. In context, the inmate complaint reads as though Plaintiff mentioned the correctional officers as witnesses to confirm his version of events (that his cellmate was high and initiated an altercation) and to establish that the relief he wanted (restitution from his cellmate for property damage) was appropriate. *Id*. The issue "clearly identified" in inmate complaint #WCI-2023-769 was Plaintiff's property damage and request for restitution, not staff misconduct. Toward that end, Plaintiff's Inmate Complaint History Report confirms that the ICE understood his complaint as a "personal property" issue. Dkt. No. 21-1.

The appeal of inmate complaint #WCI-2023-769 added, "I was brutally attacked by my cellmate…my cellmate was high off heroin…I was not fighting him…the CO at the door didn't help me…the attack was over 8 minutes…I didn't hear the COs say stop fighting…I ask the

6

conduct report be dismissed in its entirety no disciplinary action so I can get back to work." Dkt. No. 25-1 at 4. But, again, the failure to protect issue was not "clearly identified" because the relief requested on appeal was for his conduct report to be dismissed so he could get back to work. As with his initial inmate complaint, the appeal document in context reads as though the correctional officers were mentioned as an explanation for why he should not have gotten a conduct report for fighting. Based on these filings, it was reasonable that the ICE did not understand inmate complaint #WCI-2023-769 or its appeal as a complaint about staff misconduct. Plaintiff's primary concern in connection with the December 30 incident, at the time he filed inmate complaint #WCI-2023-769 and its appeal, was to get restitution for damaged property, along with reinstatement of his job. Plaintiff did not mention any complaints about staff misconduct until he filed inmate #WCI-2023-9111 six months later in June 2023, which was properly "rejected" as untimely filed without a good cause plea. Plaintiff also did not attach to his response materials the decision on inmate complaint #WCI-2023-769 and its appeal, so there is no evidence on the docket showing that the institution may have overlooked the procedural defects in inmate complaint #WCI-2023-769 and resolved it on the merits anyway. *Conyers*, 416 F.3d at 584 (noting that failure to comply with procedural rules dooms the claim except where the institution treats it as properly filed and "resolves it on the merits."). Therefore, inmate complaint #WCI-2023-769 and its appeal also did not satisfy Plaintiff's exhaustion obligation.

Finally, Plaintiff argues that he "overly exhausted" his administrative remedies and did everything he could to properly exhaust. Dkt. No. 25. He notes that an unidentified correctional officer, on an unidentified date, would not give him DOC Form 400 when he asked and that other correctional officers would not give him, or allow him to purchase, a "Wis. Adm. Code Handbook." Dkt. No. 25 at 3 & 12. Plaintiff states that the documents he attached to his summary judgment response materials show that institution staff "misled" him, "manipulated" him, and

"sabotaged" his efforts to exhaust. Plaintiff's vague assertions regarding the failure to receive a requested document, without any specific details about who was involved or when it happened, do not establish that administrative remedies were "unavailable" to him. Further, the record shows that Plaintiff ignored numerous different responses to his interview request forms, *see* Dkt. No. 25-1 at 1, 5, & 7-9, along with directives on his rejected inmate complaints, *see* Dkt. No. 21-2 at 2, that specifically told him how to raise a particular issue, which form to use, where to send the form, how to appeal, and the relevant deadlines. Contrary to Plaintiff's assertions, the evidence on the record does not show an intent to mislead, manipulate, or sabotage him. Defendants are therefore entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies. The Court will grant the motion for summary judgment and dismiss this case without prejudice.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment based on failure to exhaust administrative remedies (Dkt. No. 18) is **GRANTED**. Defendants' motion to stay summary judgment on the merits (Dkt. No. 30) is **DENIED as moot**. This case is **DISMISSED without prejudice**. The Clerk enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 10th day of April, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.